Richard ADAMS, Petitioner,

v.

Charles GREINER, Superintendent,
Respondent.

No. 02 Civ. 3888.

United States District Court,
S.D. New York.

July 9, 2003.

Richard Adams, Stormville, NY, Pro se.

### DECISION AND ORDER

MARRERO, District Judge.

Richard Adams ("Adams"), the *pro se* petitioner in this matter, is a prisoner at the New York State Green Haven Correctional Facility ("Green Haven"). Adams commenced this action on May 22, 2003 against Charles Greiner, Superintendent of Green Haven ("Greiner" or the "State") seeking a writ of habeas corpus pursuant

to 28 U.S.C. § 2254, alleging violations of various rights afforded him under the United States Constitution in connection with his conviction for manslaughter. The State now moves to dismiss the petition as time-barred pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 2244(d)(1). For the reasons set forth below, the State's motion is GRANTED.

## I. *BACKGROUND*

On November 2, 1998, following a jury trial in New York State Supreme Court, Bronx County, Adams was convicted of manslaughter in the first degree and sentenced, as a second violent felony offender, to twenty-five years imprisonment. (*See* Affidavit in Support of Motion to Dismiss Petition for Habeas Corpus dated February 26, 2003 ("State Aff."), ¶ 3; Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody dated April 23, 2002 (the "Petition") at 2.)

In his direct appeal to the State Supreme Court, Appellate Division (the "Appellate Division"), First Department, Adams, through counsel, raised three grounds for reversal of his conviction: (1) that the State's opening remarks were improper and prejudicial; (2) that the State's closing remarks were improper and prejudicial; and (3) that the trial court's jury instruction pursuant to *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (the *"Allen* Charge") was coercive.[1] (*See* Petition at 3; State Aff., ¶ 5.) On December 21, 1999, the Appellate Division unanimously affirmed Adams's conviction. *See People v. Adams,* 267 A.D.2d 140, 701 N.Y.S.2d 22, 23 (1st Dep't 1999). The court held that Adams's claim regarding the State's opening remarks was un-

preserved for appellate review, and that his requests for curative instructions were abandoned by his failure to identify the offensive statements in the record. The court further held that Adams's claim regarding the State's closing remarks was unpreserved for appellate review, and, in any event, without merit. Finally, the Appellate Division held that the trial court's *Allen* Charge was not coercive. *See id.* On March 13, 2000, the New York Court of Appeals denied Adams's application for leave to appeal the Appellate Division's ruling. *See People v. Adams,* 94 N.Y.2d 916, 708 N.Y.S.2d 355, 729 N.E.2d 1154, 1154 (2000). Adams did not seek a writ of certiorari to the United States Supreme Court. (*See* Petition at 3.)

On May 1, 2001, Adams filed a motion in the State Supreme Court, Bronx County, to vacate his judgment of conviction under New York Criminal Procedure Law § 440.10 (the "440.10 Motion"), claiming ineffective assistance of counsel at trial. (*See* Petition at 3; State Aff., ¶ 9.) Adams claimed that his trial counsel was ineffective for failing to: (1) utilize a DNA expert; (2) utilize significant impeachment evidence; (3) identify offending portions of the record so that curative instructions could be given regarding an alleged hearsay declaration; (4) request curative instructions in response to the prosecutor's summations; and (5) object to alleged juror misconduct. (*See* Affidavit in Support of Motion to Vacate Judgment (undated) ("Aff. in Support of 440.10 Motion") at 1, attached as Ex. 6 to State Aff.; State Aff., ¶ 9.)

On July 23, 2001, the State court denied Adams's 440.10 Motion, holding that the

---

**1.** When a jury announces that it is deadlocked, the trial court may give a so-called *"Allen* Charge" to assist the jurors in their deliberations by stressing the importance of reaching a verdict while, in the process, taking care not to force any juror to yield a conscientious belief. *See Allen,* 164 U.S. at 501, 17 S.Ct. 154; *United States v. Robinson,* 560 F.2d 507, 517 (2d Cir.1977); *People v. Ali,* 65 A.D.2d 513, 409 N.Y.S.2d 12, 13 (1st Dep't 1978), *aff'd,* 47 N.Y.2d 920, 419 N.Y.S.2d 487, 393 N.E.2d 481 (1979).

"[c]omplained-of possible errors raised, where not already raised in appeal, do not provide any compelling basis to consider further relief." (Order dated July 23, 2001, attached as Ex. 7 to State Aff.) On September 3, 2001, Adams applied for leave to appeal the denial of his 440.10 Motion to the Appellate Division. (*See* Notice of Motion dated September 3, 2001, attached as Ex. 8 to State Aff.) This application was denied by the Appellate Division in a decision entered November 1, 2001. (*See* Certificate Denying Leave dated October 25, 2001 (the "Certificate Denying Leave"), attached as Ex. 9 to State Aff.)

On April 23, 2002, Adams filed the instant Petition, in which he raises four grounds for relief, claiming that his conviction was obtained by: (1) improper opening statements and allusion to hearsay; (2) improper closing remarks; (3) a coercive and prejudicial *Allen* Charge at trial; and (4) ineffective assistance of trial counsel. (*See* Petition at 5–6.) On February 26, 2003, the State moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss Adams's Petition for failure to state a claim upon which relief can be granted, on the ground that Adams failed to file the Petition within the limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See* Notice of Motion to Dismiss Pursuant to Fed.R.Civ.P. Rule 12(b)(6) and 28 U.S.C. § 2244(D)(1) dated February 26, 2003 (the "Motion To Dismiss").) In an Order dated March 27, 2003, the Court directed Adams to file a response to the State's Motion To Dismiss, and Adams accordingly filed a Traverse to District Attorneys Response and Opposition dated April 18, 2003 (the "Traverse").

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

The State's Motion To Dismiss Adams's Petition as untimely is governed by 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), and by the Federal Rules of Civil Procedure. The Federal Rules apply in the context of habeas actions to the extent that they are not inconsistent with the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"). *See* Habeas Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."); Fed.R.Civ.P. 81(a)(2) ("These rules are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the Rules Governing Section 2254 Cases ... and has heretofore conformed to the practice of civil actions.").

■ Motions to dismiss habeas petitions on procedural grounds pursuant to Rule 12(b)(6) are not inconsistent with the Habeas Rules, given the wide discretion afforded district judges in the disposition of habeas petitions. *See Purdy v. Bennett*, 214 F.Supp.2d 348, 353 (S.D.N.Y.2002) (rejecting a challenge to the applicability of Rule 12(b)(6) motions to dismiss in habeas corpus proceedings, and noting that the Habeas Rules "provide that, rather than require the filing of an Answer ... the Court may 'take such other action as the judge deems appropriate.'" (quoting Habeas Rule 4)); *Ukawabutu v. Morton*, 997 F.Supp. 605, 608 (D.N.J.1998) ("The district court certainly has discretion to order or permit respondents, upon request, to file a motion to dismiss as one of the 'other actions' which the court may allow, including the discretion to permit the filing of a motion to dismiss before a respondent files an answer." (quoting Habeas Rule 4)).

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears 'beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Lerman v. Bd. of Elections,* 232 F.3d 135, 140 (2d Cir. 2000). In considering the State's Motion To Dismiss, the Court must accept all well-pleaded factual allegations in the Petition as true and draw all reasonable inferences in favor of the petitioner. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McGinty v. State of New York,* 193 F.3d 64, 68 (2d Cir.1999). The Court must "confine its consideration 'to facts stated on the face of the [Petition], in documents appended to the [Petition] or incorporated in the [Petition] by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (quoting *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)); *accord Mack v. Artuz,* No. 01 Civ. 11832, 2002 WL 31845087, at *2 (S.D.N.Y. Dec. 19, 2002). Because Adams is proceeding *pro se,* his Petition "must be read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

## B. *TIMELINESS OF THE MOTION*

The AEDPA imposes a one year limitation period for filing federal habeas corpus petitions by a petitioner in custody pursuant to a state court judgment. *See* 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The only subsections that may be relevant to the circumstances of this case are (A) and (D). Each is discussed in turn.

### 1. *Timeliness Under 2244(d)(1)(A)*

Section 2244(d)(1)(A) provides for the AEDPA's one-year limitation period to begin to run on the date a petitioner's state conviction becomes final by the conclusion of direct review. Adams's conviction became final on June 11, 2000, when the 90–day period within which, pursuant to 28 U.S.C. § 2102(c), he could have applied for a writ of certiorari from the United States Supreme Court expired. *See Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2001) (a conviction is final for § 2244(d)(1)(A) purposes upon completion of direct state appellate review and either the completion of United States Supreme Court certiorari proceedings or the expiration of time to seek review via such proceedings). Under this provision, Adams had until June 11, 2001 to file his Petition. Adams actually filed the Petition no earlier than April 23, 2002, which amounts to 316 days after June 11, 2001.[2] Therefore, unless Adams

---

**2.** Adams's *pro se* Petition was filed for the purposes of this section when he presented it

to the prison officials to be mailed to the Clerk of Court. *See Noble v. Kelly,* 246 F.3d

can benefit from the tolling provision contained in 28 U.S.C. § 2244(d)(2), his petition is untimely under the statute.

Section 2244(d)(2) provides that the limitation period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." Adams filed a 440.10 Motion to vacate his conviction on May 1, 2001, 41 days before the one year period of limitations was to expire. (*See* Petition at 3; State Aff., ¶ 9.) This 440.10 Motion was "pending" for the purposes of § 2244(d)(2) from May 1, 2001 until November 1, 2001, the date on which Adams was denied leave to appeal to the Appellate Division. (*See* Certificate Denying Leave.) The one-year period of limitations under § 2244(d)(1)(A) was thus tolled during this six-month period, and did not begin to run again until November 1, 2001. However, Adams did not file his Petition within the 41 days that remained in the one-year statutory period, which expired on December 12, 2001. The instant Petition was filed for present purposes on April 23, 2002, 132 days too late.

In summary, exclusive of tolling, 498 days passed between the date on which Adams's conviction became final and the date on which the Petition was filed. Because this delay exceeds the one-year statutory limitations period, Adams's Petition is not timely under § 2244(d)(1)(A), even taking into account the time that was tolled during the pendency of his 440.10 Motion.

### 2. *Timeliness Under 2244(d)(1)(D)*

 Having determined that Adams's Petition is not timely under § 2244(d)(1)(A), which requires that such petitions be filed within one year of the date upon which the underlying conviction

became final, the Court now turns to consider whether the Petition may nevertheless be timely under § 2244(d)(1)(D), the "newly discovered evidence" provision of the statute. As noted, this subsection allows the one-year limitation period to begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Adams alleges in his Traverse that "almost three years after [his conviction]," he discovered new evidence through the exercise of due diligence. (Traverse at 4.) Specifically, Adams claims that only after he pleaded with his trial attorney to turn over all information related to his case did he learn of the existence of multiple, inconsistent drawings rendered by the crime scene unit that investigated the crime for which he was convicted. (*Id.*) The only one of Adams's habeas claims for which this evidence might constitute a "factual predicate" for purposes of § 2244(d)(1)(D) is his claim that his trial counsel was ineffective for failing to utilize significant impeachment evidence. (*See* Aff. in Support of 440.10 Motion at 1; *see generally* Petition at 6.) Adams claims that before he discovered these inconsistencies in 2001, he "hadn't any inkling" of their existence. (Traverse at 4.)

 The facts alleged in Adams's Traverse concerning this supposed newly discovered evidence, even if true, do not support the application of § 2244(d)(1)(D) to this Petition. The case law is clear that the one-year statute of limitations governing federal habeas corpus relief begins to run from the date on which the facts supporting the claim or claims presented

---

93, 97–98 (2d Cir.2001); *Nelson v. Walker*, 121 F.3d 828, 832 n. 2 (2d Cir.1997). Adams does not indicate on what date the Petition was handed over to be mailed. The Court

will resolve this ambiguity in Adams' favor and presume that the applicable date is the date of the Petition, namely, April 23, 2002. (*See* Petition at 7.)

could have been discovered "through the exercise of due diligence ... regardless of whether petitioner actually discovers the relevant facts at a later date." *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000) (citation omitted; internal quotations omitted); *accord Rodriguez v. New York*, No. 01 Civ. 9374, 2003 WL 289598, at *12 (S.D.N.Y. Feb. 11, 2003). In other words, "when evidence is newly obtained, but could have been obtained earlier [through the exercise of due diligence], the date when the evidence was actually obtained has no effect on the AEDPA limitation period." *Duamutef v. Mazzuca*, No. 01 Civ. 2553, 2002 WL 413812, at *9 (S.D.N.Y. Mar. 15, 2002); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir.2000) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance. If § 2244(d)(1) used a subjective rather than an objective standard, then there would be no effective time limit. . . ."); *Hector v. Greiner*, No. 99 Civ. 7863, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000) ("Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered."). Indeed, "newly discovered evidence is, by definition, incapable of discovery through ... due diligence before or during trial." *Hector*, 2000 WL 1240010, at *1 (citing *United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000)).

■ In the absence of a showing of good cause, courts will reject assertions that evidence is "newly discovered" if that evidence existed prior to the time a petitioner's underlying conviction became final. *See, e.g., Middlemiss*, 217 F.3d at 123 (rejecting a claim of newly discovered evidence in the form of a witness affidavit executed post-conviction because that witness's existence was known to the defendants prior to trial); *United States v. Jacobs*, 475 F.2d 270, 286 (2d Cir.1973) ("[A]

court must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify. This is so even if, as alleged, counsel for the co-defendant making a post-trial affidavit exculpating the movant had not allowed the affiant to be interviewed prior to trial."); *Romero v. Senkowski*, 950 F.Supp. 573, 578 (S.D.N.Y. 1996) (claim of newly discovered evidence in the form of scholarly articles produced post-conviction was rejected because the underlying issue of mistaken identification was "far from novel"); *Hector*, 2000 WL 1240010, at *2 (claim of newly discovered evidence in the form of unrelated trial transcript and scholarly forensic pathology materials rejected because they all existed before petitioner's conviction became final); *Sorce v. Artuz*, 73 F.Supp.2d 292, 297–98 (E.D.N.Y.1999) (impeachment evidence in the form of newspaper articles that were inconsistent with a prosecution witness's affirmation is not "newly discovered" for § 2241(d)(1)(D) purposes because it existed prior to the date the conviction became final).

Here, the Court sees no reason, and Adams offers none, that explains why the evidence that Adams *"obtained* through a due diligent [sic] search" conducted "almost three years after he was convicted" could not have been discovered far earlier through the same exercise of due diligence. (Traverse at 4 (emphasis added).) Other than claiming that he only obtained the crime scene drawings by "pleading" with his trial counsel to provide him with copies of all trial-related documents, (Traverse at 4), Adams offers no explanation, elaboration, or detail as to why he could not have obtained that information, which he claims was in his trial attorney's possession, during his trial or immediately following his conviction in 1998. (*See* Tra-

verse at 4; Aff. in Support of 440.10 Motion at 16.) Because the factual predicate for Adams's claim accordingly could have been discovered prior to the date on which his judgment of conviction became final, the exception provided by § 2244(d)(1)(D) is unavailable.

## III. *CONCLUSION*

For the reasons discussed above, it is hereby

**ORDERED** that respondent Charles Greiner's Motion To Dismiss Pursuant To Fed.R.Civ.P. Rule 12(b)(6) and 28 U.S.C. § 2244(D)(1) dated February 26, 2003 is GRANTED; and it is further

**ORDERED** that Richard Adams's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody dated April 23, 2002 is DISMISSED.

The Clerk of Court is directed to close this case.

As the petitioner has made no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.), *cert denied,* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000).

**SO ORDERED.**